UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

_____
                                    )
KATHERINE GRAY,                     )
                    Plaintiff,      )
                                    )
         v.                         )         CIVIL ACTION
                                    )         NO. 17-52-WGY
DEVILS LAKE PUBLIC SCHOOLS;         )
LAKE REGION SPECIAL EDUCATION;      )
BARRY SUNDEEN, individually and     )
as Director of Harmony House;       )
LEE ANN JOHNSTON, STEVE             )
HALLDORSON, JEFF FRITH, JASON       )
HODOUS, and CORY MEYER,             )
individually and as members of      )
Devils Lake Public Schools School   )
Board; CATHERINE MILLER,            )
individually; RAMSEY COUNTY         )
DISTRICT COURT; KARI AGOTNESS,      )
State Attorney of Ramsey County;    )
and WAYNE STENEHJEM, Attorney       )
General of North Dakota,            )
                                    )
                    Defendants.     )
_____)


YOUNG, D.J.[1]                                      May 22, 2018

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Katherine Gray ("Gray") brings this action against the

Devils Lake Public Schools, Lake Region Special Education

("LSRE"), Barry Sundeen, individually and as Director of Harmony

House, Lee Ann Johnston, Steve Halldorson, Jeff Frith, Jason

_____

[1] Of the District of Massachusetts, sitting by designation.

Hodous, and Cory Meyer, individually and as members of Devils Lake Public Schools School Board, Catherine Miller[2] individually, the Ramsey County District Court ("RCDC"), Kari Agotness, State's Attorney of Ramsey County, and Wayne Stenehjem ("Stenehjem"), Attorney General for North Dakota, alleging retaliation under chapter 42 of the United States Code, sections 1983 and 1988, the Civil Rights Act, North Dakota Century Code, sections 50-25.1-09.1 and 34-01-20, and defamation. Gray also requests declaratory relief from a permanent injunction in Civil Case No. 36-2016-CV-00299, Devils Lake Public Schools v. Katherine Gray (the "injunction"), issued by the RCDC, as well as a writ striking down the injunction.

RCDC and Stenehjem (collectively the "State Defendants") move to dismiss the claims against them, arguing that the Court does not have jurisdiction to hear the case and should abstain from doing so because: (1) the State Defendants enjoy immunity from suit; and (2) Gray's claims against the State Defendants are a collateral attack on the injunction issued by the RCDC and should properly be reviewed by a state appellate court.

**A.   Procedural History**

Gray filed her complaint on March 16, 2017, alleging a First Amendment retaliation claim (count I) against Defendants

---

[2] Catherine Miller was terminated as a defendant on November 15, 2017.

Sundeen, Johnston, Halldorson, Frith, Hodous, and Meyer;
retaliation in violation of Title VI of the Civil Rights Act
(count II) against Defendants Devils Lake Public Schools and
LRSE; unlawful retaliation in violation of North Dakota Century
Code § 50-25.1-09.1 (count III) against Defendants Devils Lake
Public Schools and LRSE; unlawful retaliation in violation of
North Dakota Century Code § 34-01-20 (count IV) against
Defendants Devils Lake Public Schools and LRSE; defamation
(count V) against Defendants Devils Lake Public Schools, LRSE,
and Miller; a declaratory action for violations of the First
Amendment and 42 U.S.C. § 1983 (count VI) for the injunction
issued by the RCDC; and a petition for a writ under the All-
Writs Act, 28 U.S.C. § 1651 (count VII) for the injunction
issued by the RCDC.  Compl., ECF No. 1.  RCDC and Stenehjem
moved to dismiss counts VI and VII on May 2, 2017, and all
parties have fully briefed the issues.  Defs.' Mot. Dismiss
("Defs. Mot."), ECF No. 9; Defs.' Mem. Law Supp. Mot. Dismiss
("Defs.' Mem."), ECF No. 10; Pl.'s Opp'n Defs.' Mot. Dismiss
("Pl.'s Opp'n"), ECF No. 13; Defs.' Reply Pl.'s Opp'n ("Defs.'
Reply"), ECF No. 19.  On January 22, 2018, the parties filed a
stipulation waiving the scheduled oral argument and proposed
that this Court decide the case based on the related documents
filed with the Court.  Joint Stipulation, ECF No. 44.  This
Court adopted the stipulation.  See ECF No. 49.

## B.    Facts Alleged

Gray is a social worker who began working as a full-time Direct Care Provider at Harmony House.  Compl. ¶¶ 15-16. Harmony House is a residential and boarding care facility for at-risk youths in Devils Lake, North Dakota.  Id. at ¶ 4.  It is jointly operated by the Devils Lake Public Schools and the LRSE. Id. at ¶ 5.  Gray also worked as a substitute teacher at the Devils Lake Public Schools.  Id. at ¶ 17.  Gray alleges that during her employment at Harmony House, she "maintained satisfactory performance and developed a good rapport with the children in her care."  Id. at ¶ 18.

David Kosmatka ("Kosmatka") was an employee of Harmony House during Gray's employment.  Id. at ¶ 20.  Gray alleges that Kosmatka frequently abused and threatened the children at Harmony House, particularly the Native American children.  Id. at ¶¶ 21-26.  Gray alerted her direct supervisor, Barry Sundeen ("Sundeen"), on several occasions between 2015 and early 2016, that she believed that Kosmatka had been engaging in inappropriate behavior with some of the children at Harmony House.  Id. at ¶¶ 27, 35.  She also informed him that Harmony House did not offer any spiritual support for the resident Native American children at the boarding home.  Id. at ¶ 36. Gray claims that Sundeen promised that he would speak to

Kosmatka, but he never did and Kosmatka's inappropriate behavior continued.  Id. at ¶¶ 28, 30-33, 37.

Sometime around the fall of 2015, Gray made a report with the Sweetwater Elementary School regarding a first-grade teacher who she believed had been abusive toward one of the students. Id. at ¶ 38.  Gray alleged that the teacher had "physically turned a child's chair around, forced his hands in his lap, and then used two hands to force his head up, jerking his neck." Id.  She also claimed that the teacher verbally abused another special needs student.  Id.  Gray claimed that the Sweetwater Elementary School did not address any of her reports of abuse, and that the teacher continued to engage in abusive behavior towards the students.  Id. at ¶ 39.  After the reports were filed, Gray left her teaching position at the Sweetwater Elementary School.  Id. at ¶ 40.

On May 2, 2016, Gray alleges, she saw Kosmatka call a child at Harmony House "fat" twice, and he then "grabbed and squeezed [the child's] stomach with both hands and shook him."  Id. at ¶ 41.  Kosmatka acknowledged that he acted inappropriately, but stated that he had known the child for a while and could do what he wanted.  Id. at ¶ 42.  Gray did not report the incident to Sundeen because she believed Kosmatka would do it himself.  Id. at ¶ 43.

On May 11, 2016, Gray received an email from Sundeen instructing her to "report any interactions between staff and students that [you] believe is inappropriate to [Sundeen] or Danielle." Id. at ¶ 45. Following a staff meeting on May 12, 2016, Gray described the May 2 incident to Sundeen. Id. at ¶ 46.

That same day, Gray filed a formal complaint against Kosmatka and Sundeen with the North Dakota Department of Human Services and the Board of Social Work Examiners. Id. at ¶ 47. In her formal complaint, Gray alleged that Kosmatka physically and verbally abused the children and lacked sensitivity towards the Native American children at Harmony House. Id. at ¶ 48. Gray also alleged that Sundeen had made several derogatory remarks about the residents and failed to address Kosmatka's conduct when it was brought to his attention and instead covered up the incidents. Id. at ¶ 49.

Sometime around mid-May of 2016, Sundeen transferred Gray to the night shift, from 9 P.M. to 9 A.M. Id. at ¶ 51. According to Gray, it is normal practice at the Harmony House to transition employees into the night shift gradually, but her transition had been effective immediately. Id. On May 31, 2016, Gray suffered multiple tibia fractures and was on medical leave from June 1 to June 15 of 2016. Id. at ¶ 52. She returned to work in a wheelchair and continued to work the night

shift. Due to her recent injury, Gray alleges, it became difficult for her to work the night shift, and she so informed Sundeen. Id. at ¶ 53.

On June 23, 2016, Gray attended a full day of work-related training, and then went to Harmony House to work the night shift. Id. at ¶ 54. That same night, Gray informed Sundeen that she would be testifying at the Ramsey County Department of Human Services about her complaint the next morning, June 24. Id. at ¶ 55. On June 27, 2016, Sundeen fired Gray. Id. at ¶ 58. Sundeen did not provide an explanation other than that Gray's "employment with Harmony House [was] not working out." Id. at ¶ 59.

On August 21, 2016, Gray once again reported Kosmatka for child abuse, but this time to the Devils Lake Police Department and the Devils Lake School Board, after she learned that Kosmatka had inappropriately touched a child at Harmony House. Id. at ¶¶ 62-63. She proceeded to contact the child and the child's representative directly and told them that the police wanted to speak to the child regarding the incident. Id. at ¶ 64. Between August 21 through September of 2016, Gray and the child continued to communicate regarding the abuse. Id. at ¶¶ 64, 65, 67. Gray received a letter from the Devils Lake Public Schools on August 25, 2017, advising her that she could not communicate with the children at Harmony House or include their

names in documents not authorized by Harmony House, and warned her that if she did not cease all communications with the children, they would pursue legal action against her.  Id. at ¶ 68.  Gray claims she agreed to cease communications and use of the children's names going forward.  Id. at 70.

On September 1, 2016, the Devils Lake Public Schools filed an Application for Injunction against Gray in the RCDC.  Id. at ¶ 71.  It sought an injunction that would prohibit Gray from having "any contact whatsoever with any current or former residents of Harmony House, whether that contact be direct or indirect, through a third person" and "discussing any incidents or situations involving Harmony House, its residents, employees, or former residents or employees."  Id.  Violating the injunction would result in Gray's being held in contempt of court.  Id.  On September 6, 2016, Judge Lee A. Christofferson ("Judge Christofferson") granted a temporary injunction to the Devils Lake Public Schools and ordered Gray to appear at a hearing to explain why the injunction should not be made permanent.  Id. at ¶ 73.  At the hearing on October 7, 2016, Gray claims that she offered evidence as to why the injunction should not be extended but the court did not accept the evidence and did not permit Gray to testify on her behalf.  Id. at ¶ 74. Judge Christofferson informed Gray that none of her rights would be altered by a permanent injunction.  Id.  He then entered an

order on October 13, 2016, granting the permanent injunction.
Id. at ¶ 75.  The Order Granting Permanent Injunction refers to
Gray as "Respondent" and enjoins her as follows:

> The injunction would prohibit the Respondent from
> having any contact whatsoever with any current or
> former residents of Harmony House, whether that
> contact be direct, or indirectly through a third
> person.  Further, contact is to include personal
> contact, electronic contact by such methods as email,
> texting, cell phones, or by letter or other method of
> communication.  Respondent is further enjoined and
> prohibited from discussing any incidents or situations
> involving Harmony House, its residents, employees, or
> former residents or employees.  The injunction should
> further provide that a violation of the terms and
> provisions of the injunction will subject the
> Respondent to be held in contempt of court, and
> subject to the ramifications caused by a violation of
> an order of the court.

Id.; Compl., Ex. A at ¶ 4.

Following the injunction, Gray filed a complaint with the
North Dakota Department of Labor and Human Rights asserting
claims of retaliation.  Compl. ¶ 81.  After those proceedings
concluded, Gray brought the current action.  Id.

**II.  ANALYSIS**

The State Defendants argue that the Court lacks
jurisdiction to hear Gray's claims under the Rooker-Feldman
doctrine, the All Writs Act, and the Declaratory Judgment Act.
Defs.' Mem. 3-7, 11-16.  The State Defendants also argue that
Gray failed to state a claim for which relief can be granted
under 42 U.S.C. § 1983.  Id. at 9-11.  Finally, the State

Defendants argue that the Court should abstain under <u>Younger</u> v. <u>Harris</u>, 401 U.S. 37 (1971). <u>Id.</u> at 16-21.

The same standards are applied to a Rule 12(b)(1) and a 12(b)(6) motion to dismiss. <u>Satz</u> v. <u>ITT Financial Corp.</u>, 619 F.2d 738, 742 (8th Cir. 1980). When ruling on a motion to dismiss, the Court must accept the allegations in the complaint as true. <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 555-56 (2007). Allegations are viewed in the light most favorable to the nonmoving party. <u>Braden</u> v. <u>Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 595 (8th Cir. 2009). The Court will grant a motion to dismiss if the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Rule 12(b)(1) requires dismissal if the Court lacks subject matter jurisdiction over the claims. <u>Wheeler</u> v. <u>St. Louis Southwestern Ry. Co.</u>, 90 F.3d 327, 329 (8th Cir. 1996). When deciding a motion to dismiss under Rule 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." <u>Braden</u>, 588 F.3d at 594.

## A. <u>Rooker</u>-<u>Feldman</u> Doctrine

Gray argues that the Court has federal jurisdiction to hear the case and that the <u>Rooker</u>-<u>Feldman</u> doctrine does not bar the Court from hearing her claims because she is pursuing independent retaliation claims. Pl.'s Opp'n 18-20. She claims

that she is not seeking to re-litigate the merits of the injunction issued by the RCDC.  Id. at 20.

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (citations omitted).  Gray bears the burden of establishing that this Court has jurisdiction to hear this case. Id.  According to the Supreme Court, lower federal courts lack jurisdiction over any direct challenges to any claims or final state court decisions that are "inextricably intertwined" with those decisions.  Robins v. Ritchie, 631 F.3d 919, 925 (8th Cir. 2011) (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983)); see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).  "Federal claims are inextricably intertwined with state-court claims if the federal claims can succeed only to the extent the state court wrongly decided the issues before it[,]" or if the requested relief would reverse or void the state decision.  Ritchie, 631 F.3d at 925; see Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034-35 (8th Cir. 1999).

Here, Gray is seeking a review of the injunction issued by the RCDC, and she asks this Court to void or reverse that ruling.  See Compl. ¶ 134 (requesting the Court issue "a

declaration that the Temporary and Permanent Injunctions ordered by Ramsey County district court in Civil Case No. 36-2016-CV-00299, <u>Devils Lake Public Schools</u> v. <u>Katherine Gray</u>, are void as unconstitutional and shall not be enforced"). Gray's claims are actually a collateral attack on the RCDC's ruling and proceedings, rather than a constitutional attack. "If the state trial court erred in the extent it addressed the issue the [plaintiff is] now pressing, relief was available in the appellate courts of [that state]." <u>In re Goetzman</u>, 91 F.3d 1173, 1178 (8th Cir. 1996). Gray's federal claims are direct challenges to the rulings issued in the RCDC and are "inextricably intertwined" with those rulings. Therefore, this Court lacks jurisdiction to hear these claims under the <u>Rooker-Feldman</u> doctrine and those claims against the State Defendants must be dismissed. <u>See</u> <u>id.</u> (explaining a party "cannot now bring an action in federal court which would effectively reverse the state court decision or void its ruling").

Even if this Court erred in ruling that it lacked jurisdiction to hear the claims under the <u>Rooker-Feldman</u> doctrine, or any other jurisdictional doctrines,[3] Gray's claims

_____

[3] The Court does not have jurisdiction over the State Defendants under the Declaratory Judgement Act, 28 U.S.C. § 2201. <u>See</u> <u>infra</u> Section C. In addition, the All Writs Act, 28 U.S.C. § 1651, does not grant the Court jurisdiction to hear the claims. <u>See</u> <u>infra</u> Section D. The Court must also abstain from

against the State Defendants are undoubtedly dismissed because she failed to state a proper claim upon which relief could be granted.

## B.    Failure to State a Claim under 12(b)(6)

The State Defendants argue that the claims against them ought be dismissed because (1) the Eleventh Amendment bars suits against them, and (2) Gray has failed to state a claim under 42 U.S.C. § 1983.  Defs.' Mem. 7-11.

### 1.    Eleventh Amendment & Section 1983

The Eleventh Amendment bars most suits against states in the federal courts.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (noting that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state" (quoting Employees of Dep't of Pub. Health & Welfare v. Department of Pub. Health & Welfare, 411 U.S. 279, 280 (1973))).  "[A]s when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Id. at 101-02.  "In Ex parte Young, [209 U.S. 123 (1908)]," however, "the Supreme Court held that the Eleventh Amendment does not bar a suit against a state official to enjoin

---

exercising jurisdiction pursuant to Younger v. Harris, 401 U.S. 37 (1971).  See infra Section E.

enforcement of an allegedly unconstitutional statute, provided that 'such officer [has] some connection with the enforcement of the act.'" Reproductive Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon, 428 F.3d 1139, 1145 (8th Cir. 2005) (quoting Ex parte Young, 209 U.S. at 157).

Here, the RCDC is part of the state judicial system, and thus a suit against the RCDC is a suit against the State for purposes of the Eleventh Amendment. The claims against it are therefore dismissed.

Moreover, entities entitled to sovereign immunity under the Eleventh Amendment cannot be sued under section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-67 (1989); Thomas v. Illinois, 697 F.3d 612, 613 (7th Cir. 2012). Gray agrees that if the RCDC cannot be sued under section 1983, then the claim against it as it pertains to count VI should be dismissed. Pl.'s Opp'n 16.

Stenehjem argues that the suit should be dismissed against him as well because as a state official, he is immune from suit. Gray urges the Court to apply the Ex parte Young exception because she seeks a declaratory judgment that will offer prospective relief against the injunction -- an act that is not barred by sovereign immunity. See Ex parte Young, 209 U.S. at 157. She explains Stenehjem is authorized to enforce the injunction under North Dakota Century Code sections 27-10-01.3.

Pl.'s Opp'n 13-14.  In <u>Nixon</u>, the 8th Circuit held that

"statutory authority creates a sufficient connection with the

enforcement of [the injunction] to make the Attorney General a

<u>potentially</u> proper party for injunctive relief, in which case he

would be within the scope of the <u>Ex parte Young</u> exception to

Eleventh Amendment immunity."  <u>Nixon</u>, 428 F.3d at 1145.  Gray,

however, failed to demonstrate that Stenehjem either commenced

or even threatened to enforce the injunction.  The <u>Ex parte</u>

<u>Young</u> exception applies only to officials "who threaten and are

about to commence proceedings, either of a civil or criminal

nature, to enforce against parties affected an unconstitutional

act, violating the Federal Constitution."  209 U.S. at 156.

Gray "has shown no threat of irreparable injury by the Attorney

General" and thus Gray cannot seek her desired relief in this

Court.  <u>Nixon</u>, 428 F.3d at 1145; <u>see also</u> <u>Pennhurst</u>, 465 U.S. at

100-03.  For these same reasons, Gray has failed to state a

claim under section 1983 against Stenehjem.  <u>See</u> <u>Ex parte Young</u>,

209 U.S. at 157; <u>Will</u>, 491 U.S. at 71.

Gray argues that even if the State Defendants are immune

from suit, the claims should not be dismissed because they are

necessary parties to obtain the relief she seeks.  Pl's Opp'n 16

n.1.  Regardless, Gray has failed to show that the State

Defendants waived sovereign immunity to allow a suit to proceed

in federal court against them.  <u>See</u> <u>Detroit Int'l Bridge Co.</u> v.

[15]

Government of Canada, 192 F. Supp. 3d 54, 68 (D.D.C. 2016) ("[A State's] immunity would not be an issue if there were an 'unmistakably clear' abrogation of the State's immunity by Congress or an 'express and unequivocal' waiver of its immunity by [the State], thereby allowing the State to be sued in federal court." (quoting Kickapoo Tribe of Indians of Kickapoo Reservation v. Babbitt, 43 F.3d 1491, 1496 (D.C. Cir. 1995))). For these reasons as well, this Court must dismiss the claims against the State Defendants.

### C. Declaratory Judgment (Count VI)

Gray argues that the Court possesses jurisdiction over the State Defendants under the Declaratory Judgment Act, 28 U.S.C. § 2201, because she invoked federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343, and under 42 U.S.C. § 1983. Pl.'s Opp'n 23. "'(T)he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. "For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite. This is as true of declaratory judgments as any other field." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (quoting United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947)). In order properly to issue a declaratory judgment, this Court must ask "whether the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy." Id. (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Here, Gray does not allege in her complaint a controversy relating to Stenehjem. Stenehjem has neither commenced nor even threatened to enforce the injunction. Therefore, count VI of the complaint must be dismissed as to him. See id.; Eccles v. Peoples Bank of Lakewood Village, Cal., 333 U.S. 426 (1948); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937).

Count VI of the complaint must also be dismissed as to the RCDC because Gray has not exhausted her remedies under the state's appeals process. The relief Gray seeks, overturning the injunction issued by the state trial court, could be sought through an appeal at the state level. See N.D.C.C. § 28-27-02(3) (listing orders reviewable by the state appeals court of North Dakota, including "[a]n order which grants, refuses, continues, or modifies a provisional remedy, or grants, refuses, modifies, or dissolves an injunction or refuses to modify or dissolve an injunction, whether such injunction was issued in an action or special proceeding or pursuant to the provisions of section 35-22-04, or which sets aside or dismisses a writ of attachment for irregularity"). Count VI is essentially a collateral attack on the state court's order. It should be resolved by an appeal. "[A] declaratory judgment action cannot

be used as a substitute for an appeal, nor does it provide a means whereby previous judgments rendered by state or federal courts may be reexamined." Baier v. Parker, 523 F. Supp. 288, 290 (M.D. La. 1981). Therefore, count VI is dismissed as to the RCDC.

### D. **All Writs Act (Count VII)**

In count VII of her complaint, Gray requests that the Court strike down the injunctions issued by the RCDC under the All Writs Act, 28 U.S.C. § 1651. Compl. ¶¶ 135-139. This Court must dismiss Count VII. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Because this authority "exists for the sole purpose of protecting the jurisdiction of the federal courts," however, "federal courts have no power to issue a writ of mandamus in an original action brought for the purpose of securing relief by the writ, and this result is not changed because the relief sought concerns an alleged right secured by the Constitution of the United States." Craigo v. Hey, 624 F. Supp. 414, 416 (S.D. W. Va. 1985). Here, the Court does not have subject matter jurisdiction over the case because it did not issue any previous orders in connection with the case. "[T]his Court has no original jurisdiction in this matter now presented and it in no

sense sits as an appellate or supervisory tribunal for any state court of [North Dakota]." Id. Therefore, this Court dismisses count VII.

### E. **Younger** Abstention

The State Defendants argue that the Court should abstain as required by Younger v. Harris, 401 U.S. 37 (1971). "Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2nd Cir. 2003). Even were this Court not required to dismiss this action for the reasons already discussed, it would abstain from hearing Gray's claims because she has not exhausted all her state appellate remedies. Gray "may not avoid the standards of Younger by simply failing to comply with the procedures of perfecting its appeal within the [North Dakota] judicial system." Huffman v. Pursue, Ltd., 420 U.S. 592, 611 n.22 (1975); see New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989).

Moreover, North Dakota has an interest in enforcing its own judgments and rulings:

> Not only would federal injunctions in such cases
> interfere with the execution of state judgments, but
> they would do so on grounds that challenge the very

process by which those injunctions were obtained.  So
long as those challenges relate to pending state
proceedings, proper respect for the ability of state
courts to resolve federal questions presented in
state-court litigation mandates that the federal court
stay its hand.

Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987).  Gray

does not allege how proceeding in state court would hinder her

ability to present her federal constitutional claims.

Gray argues that this Court ought not abstain because the

proceedings and injunction against her were initiated in bad

faith and "motivated by a desire to harass and retaliate

against" her.  Pl.'s Opp'n 9.  Gray, however, does not allege

any bad faith or misconduct committed by Stenehjem or the RCDC.

Moreover, the relief sought by Gray is not "wholly

prospective" as she claims, a possible exception to Younger

abstention, because in her complaint, she asks the Court to

declare "void as unconstitutional" or alternatively "strik[e]

down," the temporary and permanent injunction issued by the

RCDC.  Compl. ¶¶ 134, 139; see Laurel Sand & Gravel, Inc. v.

Wilson, 519 F.3d 156, 166-67 (4th Cir. 2008) (citing Wooley v.

Maynard, 430 U.S. 705, 711 (1977)).  Consequently, this Court

abstains from exercising jurisdiction in this case as to counts

VI and VII.

**III. CONCLUSION**

For all the foregoing reasons, the Court GRANTS the State Defendants' motion to dismiss the claims against them.

**SO ORDERED.**

_____
WILLIAM G. YOUNG
DISTRICT JUDGE